******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEVEN SEWELL *v.* COMMISSIONER OF
CORRECTION
(AC 37738)

DiPentima, C. J., and Lavine and Alvord, Js.

*Argued May 25—officially released October 4, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Nazzaro, J.)

*Michael J. Culkin*, assigned counsel, for the appellant (petitioner).

*Jonathan M. Sousa*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Robert O'Brien*, former supervisory assistant state's attorney, for the appellee

(respondent).

*Opinion*

ALVORD, J. The petitioner, Steven Sewell, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court erred by concluding that his trial counsel did not render ineffective assistance. The petitioner claims that his trial counsel failed to adequately investigate the state's witnesses and prepare for trial, and as a result, he was prejudiced.[2] We disagree with the petitioner and, accordingly, affirm the judgment of the habeas court.

In deciding the petitioner's direct appeal of his conviction, this court summarized the facts that the jury reasonably could have found as follows: "On December 23, 2001, the victim, Timothy Sweat, was in the apartment he shared with his mother and brother in New Haven. The victim sold beer, cigarettes, soda and chips from his apartment to patrons he knew. At approximately 6:30 p.m. that day, Sweat responded to a knock at his door by looking through the peephole. When he recognized Judale Wynkoop, who is also known as Dell, to whom he had sold beer previously, Sweat opened the door. As the two men stood in the doorway speaking, the [petitioner] emerged from a hallway outside the apartment, holding a black pistol. As the [petitioner] approached, Wynkoop stepped away, Sweat raised his hands and the [petitioner] shot him through the thumb and into his chest at close range. Sweat tried, without success, to grab the [petitioner's] face and throat and then backed into his apartment. The [petitioner] ran down the street.

"Prior to trial, the [petitioner] filed a written request for disclosure under Practice Book §§ 40-11, 40-12 and 40-13. In its response to that request, the state did not list either Angel Ogman or Darryl Wilson as witnesses or turn over to the [petitioner] any statements attributed to these individuals.

"At trial, the state called a number of witnesses, including Sweat, Ogman, who is also known as Yummy, [certain police officers] . . . and Wilson, who is also known as D-Woo.

"During the first day of evidence, the [petitioner] moved for a mistrial because of the state's late disclosure of Wilson as a witness. That motion was denied. After Ogman testified later on that same day, the [petitioner] moved for a mistrial on the basis of her testimony. That motion also was denied. At the close of trial, the jury found the [petitioner] guilty of assault in the first degree in violation of General Statutes § 53a-59 (a) (5), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (5), and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c. Immediately after the jury returned its verdict, the [peti-

tioner] stipulated to having committed a class A, B or C felony with a firearm in violation of General Statutes § 53-202k. The court imposed a total effective sentence of twenty-five years imprisonment." (Footnote omitted.) *State* v. *Sewell*, 95 Conn. App. 815, 817–18, 898 A.2d 828, cert. denied, 280 Conn. 904, 907 A.2d 94 (2006).

The petitioner filed a writ of habeas corpus in 2006 and amended it in 2008. The petitioner argued before the habeas court that his trial counsel had been ineffective because he failed to: adequately advise the petitioner of potential defenses, conduct an investigation of the facts and witnesses that the state planned to present, obtain witness statements, present witnesses to support the defense strategy, and appropriately prepare for trial.

The petitioner's petition for a writ of habeas corpus was centered on trial counsel's handling of the Ogman testimony. As early as May 6, 2002, the petitioner's trial counsel was aware that the state intended to call a witness who was identified only as Yummy. The petitioner's trial counsel was unable to determine that Ogman was the witness known as Yummy until the state revealed her legal name on the first day of jury selection on February 14, 2003.[3] During the trial, Ogman testified that she saw the petitioner in the vicinity of the victim's apartment just prior to the shooting and that the petitioner later confessed to her that he had in fact shot the victim. Following Ogman's testimony, trial counsel moved for a mistrial on the basis of undue surprise, but the motion was denied. However, the trial court granted the petitioner's trial counsel additional time to prepare for his cross-examination of Ogman.

The habeas court concluded that the petitioner's trial counsel had performed adequately. "There was extensive cross-examination of Ms. Ogman and Mr. Wilson and Mr. Wynkoop, all on any interest the witnesses had in the outcome of the trial, bias, motive to fabricate, ability to observe and recollect. This was no three question cross by the defense attorney. Although surprised by the revelations of Ogman, [also known as] Yummy, and Wilson, [also known as] D-Woo, the attorney was afforded opportunity to prepare his cross-examinations, the length and quality of which is reflected in the transcript. Put another way, this court cannot infer any deficiency in the cross-examination of the witnesses. . . . [T]here is no evidence before this court to conclude that any additional investigation would have revealed any evidence that could affect differently the outcome in this matter."

The habeas court found that the petitioner's trial counsel personally visited the apartment complex where the crime occurred and spoke to several individuals in order to gather evidence and locate unidentified witnesses. The habeas court concluded the claim of inadequate preparation "to be unproven, again, notwithstanding the protestations and the argument in support

of the motions for mistrial, the lawyer claiming surprise and the like. It is apparent that the trial court gave counsel opportunity to review the impact of both Ogman and Wilson and recessed the proceedings in order to prepare, and there was no testimony before this court today that the lawyer was not prepared."

The petitioner also claimed that his trial counsel failed to communicate with him. According to the petitioner, the state offered a reduced sentence of fifteen years of incarceration in exchange for a guilty plea, but the petitioner rejected the offer. The petitioner argued that if his trial counsel had properly investigated Ogman and had provided better communication with him about witnesses, he may have pursued an alternative defense other than actual innocence. The habeas court refuted this claim: "[T]his court concludes that [the petitioner's trial counsel] was vigorous in his representation of [the petitioner] and understood that this particular case was not a plea case. There were no pleas offered, other than some time into the case, into the state's case, there was no plea bargaining so-called, the state's attorney didn't offer a particular plea. And the court finds that the attorney appreciated as much, given his client's position that, 'I am innocent. I didn't do it.' . . . There is no indication to lead this court to conclude that both lawyer and client did not have an open avenue of communication. This court tacitly finds that [the petitioner's trial counsel] investigated all reasonable leads and talked with all witnesses whom he knew about, or through due diligence, could reasonably know about."

The habeas court concluded that there was neither deficient performance by the petitioner's trial counsel nor was there any prejudice due to his performance. The habeas court denied the petitioner's writ of habeas corpus. This appeal followed.[4]

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction,* 125 Conn. App. 57, 61–62, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011).

"A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland,* the petitioner has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness,

and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Internal quotation marks omitted.) *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 100–101, 111 A.3d 829 (2015).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish both prongs of the *Strickland* test. *Hamlin* v. *Commissioner of Correction*, 113 Conn. App. 586, 595, 967 A.2d 525, cert. denied, 291 Conn. 917, 970 A.2d 728 (2009). "[A] habeas court may dismiss the petitioner's claim if he fails to satisfy either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Citation omitted; internal quotation marks omitted.) Id.

The petitioner claims that the habeas court erred by concluding that he failed to prove his claim of ineffective assistance of trial counsel. Specifically, the petitioner argues that the habeas court erred by finding that there had not been deficient performance by trial counsel in regards to his investigation of Ogman and preparation for her cross-examination. The petitioner also claims that the habeas court's conclusion that there was no prejudice was erroneous. We disagree. Because the petitioner must establish both prongs of the *Strickland* test in order to prevail, we address only his claims regarding the habeas court's judgment as to prejudice.

On the basis of our review of the evidence presented at the habeas trial, the petitioner has failed to demonstrate how he was prejudiced by the performance of his trial counsel. The petitioner argues that if his trial counsel had more thoroughly investigated Ogman, he would have been able to "poke holes in [her] version of the story."[5] The petitioner has not challenged the habeas court's findings that trial counsel conducted a "vigorous cross-examination trying to impeach or discredit the state's witnesses on the one hand on all aspects, ability to observe, recall, whether there was any ax to grind because of past relationships." The petitioner has not presented any direct evidence that further investigation would have yielded new evidence that would have affected the outcome of his trial. Instead, he has provided only mere speculation. See *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 175, 774 A.2d 148 (2001) ("[t]he burden to demonstrate what benefit additional investigation would have revealed is on the petitioner"). Additional investigation also would not have changed the fact that the testimony of two other witnesses corroborated Ogman's version of events, including the testimony of the victim, who identified the petitioner as the shooter. The habeas court properly concluded that the petitioner could not

establish that he was prejudiced by the alleged ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court granted his petition for certification to appeal. See footnote 4 of this opinion.

[2] On appeal, the petitioner also claims that his trial counsel provided ineffective assistance "by not making a motion for mistrial or otherwise objecting to the testimony of a witness, who was not fully disclosed until jury selection, until after that witness had already testified." This claim was not raised before the habeas court and we decline to review it. "Having not raised [an] issue before the habeas court, [a] petitioner is barred from raising it on appeal. This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the [petitioner's] claim. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 367, 90 A.3d 368, cert. denied, 314 Conn. 919, 100 A.3d 852 (2014).

[3] On direct appeal before this court, the petitioner claimed that the state's failure to properly disclose Ogman as a witness deprived him of his constitutional right to a fair trial. *State* v. *Sewell*, supra, 95 Conn. App. 815. This court affirmed the judgment of the trial court, concluding that the petitioner's rights were not violated because there was no prejudice or a denial of due process rights as a result of the late witness disclosure. Id., 823. Before the trial court, the state claimed that the late disclosure was due to the fact that the state knew the witness as "Yummy" and did not know her real name or whereabouts.

[4] On September 16, 2009, the habeas court, *Nazzaro, J.*, denied the petitioner's petition for certification to appeal. The petitioner appealed the denial of certification to this court, but that appeal was dismissed when the petitioner failed to comply with an order for supplemental briefing. On February 17, 2015, the habeas court, *Oliver, J.*, granted a motion for stipulated judgment filed by the petitioner and the respondent, the Commissioner of Correction, which restored the petitioner's appellate rights to the denial of his habeas petition. Thereafter, the habeas court, *Oliver, J.*, granted his petition for certification to appeal.

[5] On appeal, the petitioner also claims that the habeas court erred by not concluding that he was prejudiced by his trial counsel's performance because had he known the content of Ogman's testimony he would have directed his trial counsel to engage in pretrial negotiations. The petitioner did not raise this claim before the habeas court, and we decline to review it. See *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 367, 90 A.3d 368, cert. denied, 314 Conn. 919, 100 A.3d 852 (2014).