******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENDALL SMITH *v.* COMMISSIONER
OF CORRECTION
(AC 44654)

Elgo, Cradle and Suarez, Js.

*Syllabus*

The petitioner, who had been found guilty of several crimes, following a
jury trial, and who had entered a plea of nolo contendere to a charge
of being a persistent serious felony offender in connection with his role
in an armed bank robbery, sought a writ of habeas corpus. The petitioner
and another perpetrator, each openly carrying a gun, had entered the
bank and taken money from the tellers' drawers and the safes. The
petitioner claimed that his trial counsel, B, had rendered ineffective
assistance and that his plea of nolo contendere had not been knowing,
intelligent and voluntary. The habeas court denied the habeas petition,
concluding, inter alia, that B's performance was not deficient and, there-
after, granted the petition for certification to appeal. *Held*:

1. The petitioner could not prevail on his claim that B provided ineffective
assistance by failing to request an instruction requiring the jury to find
that the firearm he used during the robbery was operable pursuant to
the applicable sentence enhancement statute (§ 53-202k) with respect
to the charges of robbery in the first degree and by failing to advise the
petitioner of the public interest element of the persistent serious felony
offender charge: the petitioner's conduct in brandishing a gun as a show
of force during the robbery indicated to the victims that the gun could
have been fired and, thus, satisfied the statutory (§ 53a-3 (19)) definition
of a firearm and subjected him to sentence enhancement pursuant to
§ 53-202k; moreover, even if the jury instruction had been requested,
the trial court would have properly denied the request, thus, the peti-
tioner could not prove prejudice; furthermore, the petitioner failed to
demonstrate that, but for B's alleged deficient performance in failing to
advise him with respect to the public interest element of the charge of
being a persistent serious felony offender pursuant to statute ((Rev. to
2007) § 53a-40 (c)), he would not have entered a nolo contendere plea
with respect to that charge, as the plea canvass by the trial court reflected
that the petitioner affirmatively answered the court's question as to
whether he and B had discussed the evidence the state had to support
the charge, it was reasonable for the habeas court to conclude that the
petitioner's evidence at the habeas trial did not rebut the presumption
that B had explained the nature of the offense in sufficient detail to
give the petitioner notice of what he was being asked to admit, and the
habeas court found that the petitioner's habeas testimony that he would
not have entered a plea of nolo contendere had B properly advised him
was not credible, as the petitioner had an extensive criminal history
and the state had a strong case favoring sentence enhancement.

2. The petitioner could not prevail on his claim that his plea of nolo conten-
dere to the charge of being a persistent serious felony offender was not
knowing, intelligent and voluntary, as he failed to rebut the presumption
that B had informed him of the elements of the charge.

Argued April 4—officially released September 13, 2022

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district
of Tolland and tried to the court, *Bhatt, J.*; judgment
denying the petition, from which the petitioner, on the
granting of certification, appealed to this court.
*Affirmed.*

*Deren Manasevit*, assigned counsel, for the appellant
(petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Michael J. Proto*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SUAREZ, J. The petitioner, Kendall Smith, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his sixth amended petition for a writ of habeas corpus. The petitioner claims that the habeas court improperly concluded that (1) he was not deprived of his right to the effective assistance of counsel during his underlying criminal trial and (2) he knowingly, intelligently, and voluntarily entered a plea of nolo contendere to a persistent serious felony offender charge. We affirm the judgment of the habeas court.

The following facts, as found by the habeas court, and procedural history are relevant to our resolution of the petitioner's claims. In 2010, following a jury trial, the petitioner was found guilty of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4). The jury also found that the petitioner had committed a class B felony with a firearm in violation of General Statutes § 53-202k, a sentence enhancement statute. The petitioner also entered a plea of nolo contendere to a charge brought in a part B information of being a persistent serious felony offender under General Statutes (Rev. to 2007) § 53a-40 (c).[1] All of the charges were related to the petitioner's alleged participation in an armed bank robbery with another perpetrator that occurred on January 23, 2008, in Stafford Springs. Attorney Lawrence Bates represented the petitioner throughout the trial. On May 5, 2010, following the court's acceptance of the jury's verdict and the nolo contendere plea, the court, *Fuger, J.*, sentenced the petitioner to a total effective term of fifty-five years of incarceration. The judgment of conviction was upheld following the petitioner's direct appeal to this court. *State* v. *Smith*, 156 Conn. App. 537, 113 A.3d 103, cert. denied, 317 Conn. 910, 115 A.3d 1106 (2015).[2]

On July 6, 2015, the petitioner, as a self-represented litigant, filed a petition for a writ of habeas corpus. Thereafter, the petitioner was appointed habeas counsel. Through counsel, the petitioner filed six amended petitions, with the final amended petition being filed on May 8, 2019. In the sixth amended petition, the petitioner alleged, inter alia, that he is illegally confined because Attorney Bates' performance did not meet "the objective duty of competent representation for attorneys representing criminal defendants" and, but for his deficient performance, the "result of petitioner's criminal trial . . . would have been different and more favorable to the petitioner." Relevant to the present appeal are the petitioner's allegations that Attorney Bates rendered ineffective representation with regard to his enhanced sentence under § 53-202k, for having committed a class B felony with a firearm, and his plea

of nolo contendere to the charge of being a persistent serious felony offender.

Regarding the former allegation, the petitioner, raising a claim of ineffective assistance of counsel under the state and federal constitutions, alleged that "counsel failed to adequately research the legal issues presented by this case, namely that he did not argue, brief or request a proper jury charge concerning the requirement that the state must prove beyond a reasonable doubt that the firearm used during the commission of the robbery offense was operable . . . in order for the court to enhance the petitioner's sentence pursuant to . . . § 53-202k . . . ." Regarding the latter allegation, the petitioner, challenging his plea under the state and federal constitutions, alleged that Attorney Bates' representation was deficient with respect to the advice he rendered as to the persistent serious felony offender charge and, thus, in connection with his nolo contendere plea. The petitioner alleged that, as a result of the deficient advice provided to him by Attorney Bates, he did not knowingly, intelligently, and voluntarily enter his nolo contendere plea, and that he "would not have entered [the] plea to the charge of being a persistent serious felony offender if he had known and understood that, in order for his sentence to be enhanced as a persistent serious felony offender, it was necessary for the finder of fact to conclude that his extended incarceration would best serve the public interest."

Distinct from his claim of ineffective assistance of counsel, the petitioner alleges that his confinement is unlawful because he did not understand the "public interest" element of the persistent serious felony offender charge, that he did not knowingly, intelligently, and voluntarily enter his plea of nolo contendere, and that he would not have entered the plea "if he had known and understood" the "public interest" element.[3]

The respondent, the Commissioner of Correction, filed a return in which he either denied the substantive allegations set forth in the petitioner's sixth amended petition or left the petitioner to his proof. With respect to the petitioner's claim that his nolo contendere plea was not knowing, intelligent, and voluntary, the respondent raised the defense of procedural default. In his reply, the petitioner alleged that, to the extent that his claim concerning his nolo contendere plea is procedurally defaulted, cause and prejudice exists to overcome the default.

The claims raised in the present appeal pertain only to the habeas court's rejection of the petitioner's claims that (1) he received ineffective assistance of counsel because Attorney Bates did not request that the court instruct the jury that, under § 53-202k, it must find that the firearm used by him was operable, (2) he received ineffective assistance of counsel because Attorney Bates did not inform him that, under § 53a-40 (c), the

state would need to prove his extended incarceration was in the public interest, and (3) he did not enter his plea of nolo contendere knowingly, intelligently, and voluntarily because he did not understand the "public interest" element of § 53a-40 (c).

On May 14, 2019, the court, *Bhatt, J.*, held a trial in this matter. Relevant to the claims raised on appeal, the petitioner presented testimony from himself and Attorney Bates. The petitioner testified that, after he was convicted of robbery and conspiracy to commit robbery, Attorney Bates spoke to him about the persistent serious felony offender charge. The petitioner testified that, during this conversation, Attorney Bates did not inform him that, for him to be found guilty of being a persistent serious felony offender, the state would need to prove that extending the petitioner's incarceration was in the public interest.[4] The petitioner further testified that he would not have entered the plea of nolo contendere if he had known that the state bore the burden of proving this element of the offense.

Habeas counsel for the petitioner examined Attorney Bates about his conversation with the petitioner after the petitioner was found guilty on the charges of robbery and conspiracy to commit robbery. Attorney Bates testified that, after the jury returned its verdict, he told the petitioner that he had every right to proceed to trial with respect to the persistent serious felony offender charge, but the petitioner did not want to proceed to trial with respect to that charge and elected to enter a plea of nolo contendere.

The petitioner's habeas counsel also examined Attorney Bates regarding the sentence enhancement statute, § 53-202k. Attorney Bates testified that he had researched the statute and believed that it required the jury to find that the firearm that the petitioner allegedly used during the alleged bank robbery was, in fact, operable. At trial, however, Attorney Bates did not request that the court instruct the jury that it must determine whether or not the firearm was operable.

On February 11, 2021, in a memorandum of decision, the court denied the petitioner's sixth amended petition for a writ of habeas corpus. With respect to the ineffective assistance of counsel claim related to Attorney Bates' failure to request a "firearm operability" instruction concerning § 53-202k, the court, after discussing the text of § 53-202k and several appellate cases related thereto, reasoned that there was no legal basis for the jury instruction that the petitioner alleged should have been requested at trial. Thus, the court determined that Attorney Bates was not deficient for failing to request the instruction at issue. The court also reasoned that the petitioner could not prove that he was prejudiced by Attorney Bates' failure to request the instruction because, "even if Bates had requested an instruction [that the jury must find that the firearm was operable],

given our case law . . . the trial court would have been . . . well within its discretion to deny such a request" because operability was not an element of the offense.

With respect to the ineffective assistance of counsel claim related to Attorney Bates' advice concerning the persistent serious felony offender charge, the court found that, "[w]hen [the petitioner] entered his plea to being a persistent serious felony offender, the trial court conducted a thorough and appropriate canvass including asking [the petitioner] if he had discussed his decision with his attorney and had sufficient time to do so and whether his attorney had explained to him what the state would have to prove. [The petitioner] answered those questions in the affirmative and at no point did he indicate that he did not understand the charges or was being forced to plead or that Bates had not explained the elements to him. It is well established that the canvassing court can rely on a defendant's responses during a plea canvass. . . . The court found the plea to be knowing, voluntary, and made with advice of competent counsel. Thus, this court can infer that Bates did discuss with [the petitioner] the elements of the offense and the state's evidence. There is no deficient performance. Even assuming that Bates' performance was deficient, [the petitioner's] habeas testimony that he would not have entered a plea of nolo contendere had Bates properly advised him is not credible." (Citations omitted.)

The court also denied the petitioner's related claim that his plea of nolo contendere was invalid because he did not understand that, under § 53a-40 (c), the state bore the burden of proving that his extended incarceration would best serve the public interest. The court reiterated that, in his ineffective assistance of counsel claim concerning this issue, the petitioner was unable to demonstrate that Attorney Bates rendered deficient performance or that he had been prejudiced thereby. The court reiterated that it did not find the petitioner's testimony credible insofar as he testified that he would not have pleaded nolo contendere if he had been advised of the public interest requirement and concluded that the petitioner had not demonstrated that his plea was not knowing, intelligent, and voluntary in nature.[5]

On March 4, 2021, the court granted the petitioner's petition for certification to appeal. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

First, the petitioner claims that the court erred by concluding that he was not deprived of his right to the effective assistance of counsel during his criminal trial. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well set-

tled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . .

"A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, the petitioner has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . .

"In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish both prongs of the *Strickland* test. . . . [A] habeas court may dismiss the petitioner's claim if he fails to satisfy either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Citations omitted; internal quotation marks omitted.) *Sewell* v. *Commissioner of Correction*, 168 Conn. App. 735, 741–42, 147 A.3d 196 (2016), cert. denied, 324 Conn. 907, 152 A.3d 1245 (2017).

In this first claim raised on appeal, the petitioner asserts that the court erred in concluding that Attorney Bates was not ineffective for failing (1) to request an instruction requiring the jury to find the firearm he used during the bank robbery was operable under § 53-202k and (2) to advise the petitioner of the "public interest" element of the persistent serious felony offender charge. We are not persuaded with respect to either argument.

A

We first address the petitioner's claim that Attorney Bates rendered deficient performance by failing to request that the jury be instructed about operability for purposes of § 53-202k.[6]

Relevant to this claim, we note the following additional facts detailing the manner in which the bank robbery occurred, as set forth in this court's opinion affirming the judgment of conviction: "On January 23, 2008, at approximately 11:45 a.m., two men entered the front door of the Workers' Federal Credit Union in Stafford Springs wearing ski masks, gloves and dark clothing. The first man to enter, while carrying a gun

in his left hand, jumped over the counter into the teller area, where three tellers were then working. He ordered the tellers to put up their hands and asked them where the money was. After taking the money from the tellers' cash drawers and putting it in a bag, the man jumped back over the counter into the lobby area of the bank.

"While the first man was taking money from the tellers' cash drawers, the second man, who also was carrying a gun, ran toward the back of the bank to the desk of Stacey Fisher, another bank employee. On reaching Fisher's desk, the second man forced her at gunpoint to lead him into the vault area behind her so he could access the bank's safes. As the first man jumped back over the counter into the lobby area, the second man emerged from the vault area carrying four or five cash drawers from one of the bank's two safes. Upon meeting near the front door of the bank, the two men exited and got into a small or medium sized, silver or light colored car that had been parked in front of the building." (Footnote omitted.) *State* v. *Smith*, supra, 156 Conn. App. 541–42.

In his appellate brief, the petitioner asserts that "Bates *correctly* understood that § 53-202k requires proof [that] the firearm justifying application of the enhancement was capable of firing a shot, and his failure to seek an instruction on operability was both deficient and prejudicial. The habeas court's analysis of this issue was incorrect and therefore does not support a conclusion that Bates' representation was adequate." (Emphasis added.) The petitioner also argues that the statute is ambiguous because it states that the sentence enhancement statute applies when a person who commits a felony "represents by his words or conduct that he possesses any firearm as defined in section 53a-3 . . . ." General Statutes § 53-202k. The petitioner argues that the phrase "represents by his words or conduct that he possesses any firearm" appears to contradict the legislative requirement that the firearm fall under the definition set forth in § 53a-3 and, thus, gives rise to a statutory ambiguity that necessitates the use of extratextual sources to resolve. From here, the petitioner urges that the statute be interpreted on the basis of the legislative history that, in his view, suggests that operability is an essential element of the sentence enhancement statute. We need not engage in a statutory interpretation analysis to resolve the petitioner's claim because § 53-202k has been the subject of prior judicial interpretation and that interpretation resolves the issue before us.

The relevant portion of § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3 . . . shall be imprisoned for

a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony." General Statutes § 53-202k. "There are two elements to § 53-202k. The first element is that the defendant has committed a class A, B or C felony. . . . The second element of § 53-202k is that the defendant used, was armed with and threatened the use of, displayed, or represented by his words that he possessed a firearm as 'firearm' is defined in [General Statutes] § 53a-3 (19)." *State* v. *Brown*, 259 Conn. 799, 807–808, 792 A.2d 86 (2002). Section 53a-3 (19) defines a " '[f]irearm' " as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged."

Our Supreme Court's reasoning in *State* v. *Brown*, supra, 259 Conn. 799, is particularly relevant to our analysis of the present claim. In *Brown*, the defendant was convicted of robbery in the first degree in violation of §§ 53a-8 and 53a-134 (a) (4), conspiracy to commit robbery in the first degree in violation of §§ 53a-48 (a) and 53a-134 (a) (4), and larceny in the second degree in violation of General Statutes §§ 53a-8 and 53a-123 (a) (3). Id., 801. The jury also found that the defendant was subject to an enhanced penalty under § 53-202k because he had used a firearm in the commission of the crime. Id., 805. The jury reasonably could have found that the defendant stole the victim's car after robbing the victim at gunpoint. Id., 802–803. A second armed individual, who drove the defendant to the victim's location, told the defendant to " '[j]ust pop him.' " Id., 803. Recognizing this as an instruction to shoot the victim, the victim implored the defendant to let him go. Id. The defendant told the victim to walk away and not look back. Id. As the victim walked away, however, he looked back at the defendant. Id. The defendant then threatened the victim, saying, " 'Do you want to get shot . . . .' " Id. The defendant did not shoot the victim, but he left the scene in the victim's automobile. Id.

In *Brown*, the defendant challenged the enhanced penalty imposed on him under § 53-202k. Id., 800–801. After this court affirmed the judgment of conviction, our Supreme Court granted certification limited to the question of "whether the trial court was required to define the term 'firearm' when instructing the jury on the sentence enhancement provision of § 53-202k." Id., 805. The defendant argued that the court's failure to instruct the jury on the definition of a firearm under § 53a-3 (19) rendered the jury instruction constitutionally defective. Id., 808. In particular, the defendant focused on the trial court's failure to instruct the jury, in accordance with § 53a-3 (19), that the state was required to prove that the gun that the defendant used in the robbery was capable of discharging a shot. Id., 809. The state argued that the instruction concerning

operability was not necessary and the defendant was subject to the enhancement of his sentence because the evidence demonstrated that he had represented by his words and conduct that the weapon he used during the robbery was capable of discharging a shot. Id.

In rejecting the defendant's claim, the court in *Brown* explained, "We conclude that the state was not required to prove that the gun held by the defendant was capable of discharging a shot. First, the statements by the defendant and the second perpetrator relative to shooting the victim were representations that the gun in the defendant's hand could be fired, and therefore representations that the gun was a firearm as defined by statute. Because of those representations, the jury properly could have applied § 53-202k without the state having proved that the gun could be fired. Second, the sentence enhancement provision properly may be applied to the defendant because we do not distinguish between the principal and an accessory when applying the sentence enhancement provision for the use of a firearm in the commission of a crime. . . . In the present case, the second perpetrator fired several shots at the police during the foot chase, which establishes that he used a weapon from which a shot could be discharged. The second perpetrator's gun, therefore, satisfied the statutory definition of a firearm and both the second perpetrator and the defendant are subject to sentence enhancement under § 53-202k because the second perpetrator 'use[d], or [was] armed with and threaten[ed] the use of, or display[ed]' a firearm. Accordingly, we conclude that the defendant's claim fails . . . ." (Citation omitted; footnote omitted.) Id., 810–11. The court also stated, "Not only did the defendant in the present case specifically represent that he had a gun, but his statement and that of the second perpetrator also represented that the gun held by the defendant could be fired. Such explicit representations that a gun is capable of firing a shot, however, may not always be necessary in order to apply the sentence enhancement provision of § 53-202k. It may be that brandishing a gun as a show of force during a crime indicates to the victim that the gun may be fired and therefore satisfies the statutory definition of a firearm and subjects a defendant to sentence enhancement. That is not the question before us in this case, however, and we leave it for a later time." Id., 810 n.11.

We conclude that the facts of this case are similar to those in *Brown* and, therefore, that the analysis in *Brown* controls our disposition of the petitioner's claim. Like the defendant in *Brown*, the petitioner represented that his firearm was capable of firing a shot. The petitioner and his coconspirator pointed their guns at the bank tellers and ordered them to locate the money in the credit union and lead one of the perpetrators to the vault. *State* v. *Smith*, supra, 156 Conn. App. 541. The petitioner's use of a gun to force the bank tellers to

assist him during the robbery represented to the tellers that the gun could be fired. Although the petitioner did not make the type of explicit representations concerning the operability of his gun that were present in *Brown*, we are satisfied that his conduct in brandishing his gun as a show of force during the bank robbery indicated to the victims that the gun could have been fired. Thus, we are satisfied that the petitioner's conduct satisfies the statutory definition of a firearm and subjected him to sentence enhancement pursuant to § 53-202k.

Noting the habeas court's reliance on *Brown*,[7] the petitioner argues that *State* v. *Grant*, 294 Conn. 151, 982 A.2d 169 (2009), and *State* v. *Velasco*, 253 Conn. 210, 751 A.2d 800 (2000), contravene *Brown* and suggest that the jury should have been instructed on operability in the present case. For the reasons that follow, we disagree with the petitioner's interpretation of these cases.

In *Grant*, our Supreme Court considered whether a BB gun was a "firearm" as defined in § 53a-3 (19) for the purpose of deciding whether a defendant was properly charged under § 53-202k with using a firearm in the commission of a felony. *State* v. *Grant*, supra, 294 Conn. 156–57. Contrary to the petitioner's assertion, this analysis did not require that operability be proven for § 53-202k to apply. The question of whether the BB gun was a "firearm" was salient to determining if the defendant *used* a firearm in committing a felony. Id., 157. The analysis did not concern whether the operability of a firearm was relevant in the context of a person committing a felony while *representing* he possesses an operable firearm, as was the case in *Brown*. See id., 156. In our view, *Grant* has no effect on the court's holding in *Brown* that operability need not be proven when a defendant *represents* that he possesses an operable firearm. The petitioner's reliance on *Grant* is, therefore, misplaced.

In *State* v. *Velasco*, supra, 253 Conn. 212, our Supreme Court addressed whether § 53-202k permits the court, rather than the jury, to find that a defendant used a firearm in the commission of a felony. The defendant in *Velasco* was found guilty of two counts of felony murder in violation of General Statutes § 53a-54c, and conspiracy to commit robbery in the first degree in violation of §§ 53a-48 (a) and 53a-134 (a) (3). Id., 217. When sentenced, the trial court applied § 53-202k after determining that, on the basis of the evidence at trial, the state proved beyond a reasonable doubt the defendant had committed the underlying felony with a firearm. Id. On appeal, our Supreme Court vacated the sentence enhancement imposed under § 53-202k after concluding that the question of whether the accused used a proscribed firearm in the commission of a felony must be decided by the jury, not the court. Id., 214. In

the present case, the jury was asked by interrogatory whether the petitioner had used a firearm in the commission of a felony. The court did not make that finding in place of the jury and, contrary to the petitioner's arguments, § 53-202k was not "automatically" applied in this case simply because the petitioner committed a violation of a felony, § 53a-134 (a) (4). Accordingly, we fail to see how *Velasco* supports the petitioner's assertion that an instruction on operability was warranted in the present case. For the foregoing reasons, we are persuaded that the court correctly relied on *Brown* in concluding that the petitioner failed to prove that trial counsel's failure to request an instruction on operability constituted deficient performance.

For the foregoing reasons, we also agree with the habeas court that, even if Attorney Bates was deficient in failing to seek an instruction on operability, the petitioner cannot prove prejudice. Under *Brown*, even if the jury instruction had been requested, the trial court would have properly denied the request. Accordingly, the court did not err in rejecting the petitioner's claim that counsel was ineffective for failing to request jury instructions on operability.

B

Next, we address the petitioner's claim that the court improperly concluded that Attorney Bates did not render effective representation because he failed to inform him of the "public interest" element of the persistent serious felony offender charge. We conclude that the court properly determined that the petitioner failed to demonstrate that Attorney Bates did not advise him of the essential elements of the offense.

We note the general proposition that, "even without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. . . . [U]nless a record contains some positive suggestion that the defendant's attorney had not informed the defendant of the elements of the crimes to which he was pleading guilty, the normal presumption applies." (Citations omitted; internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 783–84, 894 A.2d 963 (2006).

On careful examination of the record, we find support for the court's determination that Attorney Bates had informed the petitioner of the elements of the persistent serious felony offender charge. Initially, we observe that the habeas court reviewed the transcript of the canvass that the trial court conducted concerning the petitioner's nolo contendere plea. The plea canvass reflects that the petitioner affirmatively answered the court's question as to whether he and his counsel discussed the evidence the state had to show to support

the charge. The following examination occurred during the canvass:

"The Court: Have you had enough time to talk with your attorney about your case and decision to enter a plea of nolo contendere to this part B information?

"[The Petitioner]: Yes.

"The Court: Have you also specifically discussed with your attorney the evidence that the state claims it has to show that you were involved in this matter, that there's evidence to support the [charge set forth in] the part B [information]?

"[The Petitioner]: Yes."

Later in the canvass, the petitioner responded affirmatively when the court asked him if he was "fully satisfied" with the representation provided to him by Attorney Bates.

On the basis of the petitioner's answers to the court's inquiry, the court reasonably could have presumed that trial counsel explained the nature of the offense in sufficient detail to give the petitioner notice of what he was being asked to admit. We note that the defendant pleaded nolo contendere pursuant to an information that explicitly listed § 53a-40 (c) as the governing statute, and he entered his plea in direct response to being asked for his plea on the charge of being "a persistent serious felony offender." Although the court did not refer to the state's burden of proving that sentence enhancement was in the public interest, there is no finding or allegation that the court's canvass of the petitioner was inadequate. It is well settled that "[a] trial court . . . may properly rely on . . . the responses of the [defendant] at the time he responded to the trial court's plea canvass, in determining that he was adequately informed of the elements of the offense charged." (Internal quotation marks omitted.) *State* v. *Lage*, 141 Conn. App. 510, 520, 61 A.3d 581 (2013).

The petitioner contends that Attorney Bates' testimony at the habeas trial reflects that the petitioner was not informed of the essential elements of the offense. Specifically, the petitioner relies on the examination and cross-examination of Attorney Bates regarding one conversation he had with the petitioner after the jury returned its verdict finding the petitioner guilty of robbery and conspiracy to commit robbery. The following colloquy between the petitioner's counsel and Attorney Bates occurred:

"[Attorney Bates]: [A]t the end of the first part of the trial where there was a guilty finding and there was an opportunity to fight the . . . [persistent serious felony offender charge], I told . . . [the petitioner] he had every right to have it and that we could argue. He said I don't want to argue it, I'm all done.

"[The Petitioner's Counsel]: What did you tell him

that you could argue?

"[Attorney Bates]: I didn't. We didn't get any further than what I just said to you.

"[The Petitioner's Counsel]: Did you tell him whether or not he had a defense?

"[Attorney Bates]: I told you what I said to him, that we could argue the point. And he said I'm through.

"[The Petitioner's Counsel]: And that was the entire extent of the conversation?

"[Attorney Bates]: Yes."

The petitioner also relies on the following exchange that occurred during the respondent's cross-examination of Attorney Bates:

"[The Respondent's Counsel]: You thought [in regard to the persistent serious felony offender charge] it would've been easily proven that his extended incarceration was in the public interest. Would you agree?

"[Attorney Bates]: Yes.

"[The Respondent's Counsel]: And [the petitioner] understood that as well.

"[Attorney Bates]: I don't know the—I'm not sure about that."

The petitioner urges us to interpret this testimony to suggest that *at no point during his representation of the petitioner*, did Attorney Bates advise him of the elements of the offense. However, Bates' testimony, quoted previously, described a conversation with the petitioner at a specific point in time. It was limited to what Bates told the petitioner after the jury found him guilty of the underlying offense. Bates' testimony did not suggest that he had not explained the elements of the offense prior to the finding of guilt. Attorney Bates' testimony does not suggest that the petitioner was never informed of the elements of the charge. It was not unreasonable for the court to conclude that the petitioner's evidence at the habeas trial did not rebut the presumption that Attorney Bates had explained the nature of the offense in sufficient detail to give the petitioner notice of what he was being asked to admit.[8] Accordingly, the habeas court did not err in denying the petitioner's claim after finding that counsel had informed the petitioner of the elements of the persistent serious felony offender charge.

Under *Strickland*, our conclusion that the petitioner has not proven deficient performance is a sufficient basis on which to reject the present claim of ineffective representation. See *Sewell* v. *Commissioner of Correction*, supra, 168 Conn. App. 742. However, we conclude that the petitioner's claim also fails because he has failed to demonstrate that, even if he was not advised with respect to and was unaware of the public interest

element, he would not have entered the nolo contendere plea. The court, in analyzing the prejudice prong of *Strickland*, made the critical finding that, "[e]ven assuming that [Attorney] Bates' performance was deficient, [the petitioner's] habeas testimony, that he would not have entered a plea of nolo contendere had [Attorney Bates] properly advised him, *is not credible*." (Emphasis added.) As we have stated previously in this opinion, it is not the role of this court to second-guess the credibility determinations made by the trial court. See *Sewell* v. *Commissioner of Correction*, supra, 741; see also *David P*. v. *Commissioner of Correction*, 167 Conn. App. 455, 470, 143 A.3d 1158 (reviewing court must defer to credibility assessment of trial court based on its firsthand observation of conduct, demeanor, and attitude of witness), cert. denied, 323 Conn. 921, 150 A.3d 1150 (2016). Also, the court, observing that the present claim did not involve the rejection of a plea offer but a decision to enter a nolo contendere plea, also noted that the state had a strong case favoring sentence enhancement and that the petitioner "[had] presented no evidence that the state would have been unable to show that he needed to be incarcerated for an extended period of time."[9] Like the habeas court, we conclude that the petitioner's extensive criminal history undermines his argument that, being properly advised with respect to the persistent serious felony offender charge, he would have elected to exercise his right to a trial. For the foregoing reasons, in our plenary review of the issue of prejudice, we conclude, as did the habeas court, that the petitioner has not demonstrated that, but for the alleged deficiency of Attorney Bates, he would not have pleaded nolo contendere with respect to the part B information.

## II

Next, the petitioner claims that his plea of nolo contendere was not knowing, intelligent, and voluntary. We are not persuaded by this claim.

We begin by setting forth the relevant legal principles that guide our analysis of the petitioner's claim. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Questions of law and mixed questions of law and fact receive plenary review." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 174, 982 A.2d 620 (2009). "The application of the habeas court's factual findings to the pertinent legal standard . . . presents a mixed question of law and fact . . . ." *Duperry* v. *Solnit*, 261 Conn. 309, 335, 803 A.2d 287 (2002).

"The constitutional stricture that a plea of guilty must be made knowingly and voluntarily . . . requires not only that there be a voluntary waiver during a plea

canvass of the right to a jury trial, the right of confrontation and the right against self-incrimination, but also that the defendant must be aware of and have an understanding of all of the elements of the crime or crimes with which he is charged . . . . [T]he plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Hackett*, 16 Conn. App. 601, 602, 548 A.2d 16 (1988).

In support of the present claim, the petitioner relies on the factual premise that underlies the claim that we addressed in part I B of this opinion, specifically, that Attorney Bates failed to inform him of the elements of the persistent serious felony offender charge. The petitioner further argues that, because he did not know the elements of the charge, his plea of nolo contendere was not knowing, intelligent, and voluntary.

As the habeas court found, and we have addressed in part I B of this opinion, the petitioner did not rebut the presumption that counsel informed him of the elements of the charge. Therefore, we agree with the habeas court that this claim fails on its merits.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] All references in this opinion to § 53a-40 (c) are to the 2007 revision of the statute.

[2] The facts of the underlying conviction are set forth in this court's opinion affirming the judgment of conviction. Although it is not necessary to repeat those facts in their entirety here, we will set forth relevant facts as necessary in the context of the claims raised in this appeal.

[3] In his habeas petition, the petitioner, relying on the state and federal constitutions, also alleged violations of the right to due process and a fair trial as a result of the state's presentation of false testimony and the court's admission of false testimony, a violation of the right to the effective assistance of appellate counsel, and a violation of the right to nonconflicted trial counsel. The habeas court denied each of these claims. The petitioner does not raise claims of error related to these aspects of the habeas court's decision.

[4] The petitioner testified that Attorney Bates advised him that he should plea nolo contendere to the charge because "all [the state] had to show [was] that [he] had been convicted three times" and that there was nothing the petitioner could do to refute the charge.

[5] The court did not address the respondent's claim of procedural default with respect to this count of the sixth amended petition, noting that, regardless of whether this claim was procedurally defaulted, the petitioner's claim failed on its merits.

[6] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[7] We note that the habeas court also relied on *State* v. *Tinsley*, 47 Conn. App. 716, 720, 706 A.2d 1008, cert. denied, 244 Conn. 915, 713 A.2d 833 (1998), in which this court similarly rejected a claim that a defendant should not be subject to the enhanced penalty under § 53-202k because the evidence did not establish that he used or was armed with a firearm during the

commission of the crime. In rejecting the claim, this court stated: "The defendant . . . claims that § 53-202k applies only after it is established that in the commission of the underlying felony for which the defendant was convicted, the weapon used was proven capable of discharging a shot. It has already been established that a guilty verdict under § 53a-134 (a) (4) does not require proof of operability [of the gun]. A conviction can result whether or not the defendant possessed a gun. All that is required is that the defendant displays or threatens the use of what he represents by his words or conduct to be a [gun]. . . . To conclude otherwise would render this statutory provision inapplicable in situations where weapons cannot be recovered or where a defendant represents to have a gun but, in fact, does not. Certainly, the legislature did not intend to omit those frequently occurring scenarios from sentence enhancement." (Citation omitted; internal quotation marks omitted.) Id., 721–22.

[8] In a similar case, *State* v. *Reynolds*, 126 Conn. App. 291, 11 A.3d 198 (2011), this court considered whether a defendant had validly waived his right to a jury determination of his guilt under a part B information. The defendant in *Reynolds*, like the petitioner in the present case, attempted to demonstrate that he did not understand that the state bore the burden of demonstrating that an extended period of incarceration was in the public interest. Id., 297. In rejecting the claim, this court observed that a trial court may presume that the defendant's standby counsel had reviewed the elements necessary to enhance the defendant's sentence with the defendant, and that the defendant had not rebutted that presumption "by offering evidence that standby counsel could not later remember the content of her advice." Id., 305.

[9] Specifically, the court stated: "The state needed to prove that [the petitioner] stands convicted of a felony, was previously convicted of and imprisoned for a felony, and that extended incarceration would best serve the public interest. . . . All three of these elements are easily satisfied. [The petitioner's] criminal record encompassed no fewer than twenty-three convictions involving firearms. These convictions included five robberies, including one in Massachusetts committed after the Stafford Springs credit union robbery. Seventeen of the twenty-three convictions were for felonies. . . . The sentencing court noted that [the petitioner] was a career, violent criminal offender with numerous convictions for serious crimes of violence in his past. That court further noted that [the petitioner's] repeated acts of criminality demonstrated his total inability and total lack of desire to be a law-abiding member of society, thereby forfeiting his right to freedom. The sentencing court then emphasized that, in its view, [the petitioner] should never be at freedom again in our society and should never be considered for parole or early release." (Citation omitted; footnote omitted.)

---